**TROSHINSKY v. FELDMAN.**

No. 1043.

Municipal Court of Appeals for the District of Columbia.

Argued April 16, 1951.

Decided May 15, 1951.

I. H. Halpern, Washington, D. C., for appellant.

Leonard S. Melrod and James M. Desmond, Washington, D. C., Charles S. Sures, Washington, D. C., on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

The question presented for our decision is whether the trial court ruled properly in granting a motion to direct a verdict on

the opening statement of a plaintiff who had filed a traverse in a garnishment proceeding. These are the facts as presented in the opening statement of plaintiff's counsel and as revealed by the earlier proceedings in the case:

On November 6, 1948, Morris Troshinsky, who is appellant here, filed a debt suit against Simon Schoen. Pursuant to Code 1940, § 16–301, he alleged in an affidavit that the defendant had "assigned, conveyed or disposed his property with intent to hinder or delay his creditors, particularly the plaintiff." Based on that allegation, there was issued an attachment before judgment which with the usual interrogatories was served on Solomon Feldman, an attorney, on November 9, 1948. Answering the interrogatories Feldman admitted that Schoen's grocery business had been sold and that together with another attorney, C. Dean Reasoner, he was holding the proceeds of such sale totaling $12,199.27. He listed a total of six "preferred liens" on the fund. Three he said were covered by deeds of trust and one by a lien recorded by the Collector of Internal Revenue. He said two further sums were owing by defendant Schoen: a $500 payment to the agents who had arranged the sale of the business, and a $750 sum for legal services rendered to Schoen by Mr. Reasoner. By deducting the aggregate sum of these "preferred liens" from the sale proceeds of $12,199.27, Feldman's answer said $1094.96 was left to be distributed pro rata among unsecured creditors. The answer also said that creditors' claims approximated $10,000, and stated that garnishments served against him in prior attachments amounted to $2218.98. Plaintiff-garnishor moved for leave to orally examine the garnishee Feldman and though the examination was duly held the record does not reveal whether anything significant or anything different from the answer was presented at the oral examination.

In the meantime defendant Schoen was personally served with process and having filed no answer, plaintiff Troshinsky in due time obtained a personal judgment for $590 against him and thereafter moved for a judgment of condemnation to enforce said judgment. Judge Myers, on January 3, 1949, granted a judgment of condemnation "subject to the ruling heretofore made as to preference for payment as filed in cases presented by other judgment debtors." The earlier ruling to which he referred was contained in a memorandum opinion filed by him on December 20, 1948, granting seven other judgments of condemnation for debts due from the same defendant Schoen. The memorandum set forth that the attaching creditors should be paid in the order in which their respective writs of garnishment were delivered to the United States Marshal for service upon the garnishee.[1]

Troshinsky, plaintiff in this case, filed on December 27, 1948 a motion to direct the garnishee to withhold payment in the other cases. But despite such motion the record shows that on January 8, garnishee distributed all the funds he held to the six "preferred" creditors he had described in his answer and to the first four attaching creditors set forth in Judge Myers' order. On January 24, 1949, the court denied the motion to withhold payment as to the attaching creditors, holding that the question was moot. Then on January 26, 1949, garnishor filed his traverse, a procedure authorized by Code 1940, § 16–317, when an attaching plaintiff wishes to challenge a garnishee's answer. He took "issue with the credits or lack of credits that the Garnishee avers in his answer," and as was his statutory right, demanded a jury trial.

The issues raised by the traverse went to trial before Judge Scott and a jury and resulted in a directed verdict on plaintiff's opening statement and also in the allowance of a fee of $150 to each of two at-

---

1. Judge Myers cited International Finance Corp. v. Jawish, 63 App.D.C. 262, 71 F. 2d 985, 987. But that case recognized that under Code 1940, § 15–209, "an execution issued on a judgment of the municipal court shall not be a lien on the personal property of the judgment defendant except from the time when it is actually levied."

torneys. It is on plaintiff's appeal that the case has come here for review.

The salient features of the opening statement and what plaintiff was offering to prove were that the proceeds of the sale of Schoen's grocery business, somewhat in excess of $12,000, was being held in escrow under a trust agreement for distribution to creditors; that plaintiff was entitled to be included in such distribution, and that several of the claims which the garnishee was attempting to treat as "preferred liens" were not entitled to preference over plaintiff's attachment lien. Specifically counsel for plaintiff said he would prove that plaintiff was not notified of the sale of the business until almost two months after the sale had been made. He challenged the right of the garnishee to give preference to any of the alleged lienholders. He specifically challenged the right of Kogod and Bookoff to a lien for their commission claim of $500, and challenged Reasoner's right to a lien for the attorney's fee of $750 which he was claiming. Plaintiff asserted that his own lien was superior to all said claims; that the garnishee Feldman was in the position of a trustee and as such had no right to prefer the claim of one creditor over another except as authorized by law.

■ The position taken by the garnishee, Mr. Feldman, and apparently adopted by Judge Scott, was that Judge Myers by his earlier order had approved the distribution of the funds as set out in Feldman's answer and that hence the garnishee could not be held accountable in this proceeding. But it seems plain to us that this was an erroneous construction of Judge Myers' order. All that Judge Myers had done was to set forth the order of payment to attaching creditors who had obtained judgments of condemnation in the other cases. Neither in Judge Myers' order nor elsewhere in the record is it shown that there had ever been a hearing or determination of the issues raised in this traverse proceeding. There had certainly been no hearing or determination concerning the contest between plaintiff's attachment lien and the "preferred claims" set up in garnishee's answer. This fact alone disposes of the contention made hereby the garnishee that plaintiff had lost his rights because he did not appeal from the judgments of condemnation entered December 20, 1948 and January 3, 1949. In our view of the matter there was no need for plaintiff to appeal from those orders because they were not decisive of his rights and left him free to proceed by traverse as he did. And when he presented his contentions by such traverse he was entitled to have them tried. He was by no means bound by the claim in garnishee's answer that the alleged trust holders, agents and the attorney enjoyed a "preferred lien" status.

■ Trust liens are not self-establishing, or at any rate not self-proving. Plaintiff demanded and was entitled to see the trust agreements and to examine witnesses concerning them. One trust note was produced, running to Albert Litoff and showing a balance due of $3727.20. But as to the other trust "liens" totaling more than $5000 nothing was produced, nor was plaintiff permitted to explore the matter.

How did the agents' claim come into existence in the first place? Who authorized their services and on what basis? What services did they actually perform? Were they actually licensed business chance brokers? Was the amount of their commission arrived at on a percentage basis or as a flat fee? What were the special circumstances which created a lien in their favor? None of these questions was decided or attempted to be decided by Judge Myers. Such questions were not even before him.

So, too, as to the attorney's fee allegedly due Mr. Reasoner. What services did he render, of what nature, during what period, and at whose request? Were they services which had been rendered to Schoen personally or in connection with his grocery business? Or were his services limited to the negotiations leading up to and connected with the sale of the business? After all, attorney's fees do not automatically become liens on funds of this character and here, except for the garnishee's bare statement—a mere assumption at best—there has never been a word of proof from which it could be held that a lien had been cre-

ated in favor of the attorney or that he was for some other reason entitled to be paid ahead of attaching creditors.

What notice, if any, was given to this plaintiff under the Bulk Sales Law, Code 1940, §§ 28–1701, 28–1702, and when was it given? These were questions raised by plaintiff, and which required the taking of testimony. These are not the only questions which presented issues for trial: we have singled them out because of their prominence and because they illustrate the correctness of plaintiff's position.

These and other related facts should have been developed by evidence so that the jury (or the court, if the matter did finally resolve itself into an issue of law) could pass on the conflicting claims of the parties.

Reversed and remanded for further proceedings in accordance with this opinion.